IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-7031-JPO |
| | ) | |
| ROBIN K. KELLY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

I.   Introduction and Background

This misdemeanor case comes before the undersigned U.S. Magistrate Judge, James

P. O'Hara, on a motion to dismiss by the defendant, Robin K. Kelly, **(doc. 13)**.   The

government has filed a response (doc. 14).   Defendant has informed the court that she will

not file any reply brief.

On February 1, 2008, defendant was charged in an information with driving a vehicle

under the influence of alcohol, in violation of 18 U.S.C. § 13, which incorporates Kan. Stat.

Ann. § 8-1567.   She was also charged with re-entering the Fort Leavenworth, Kansas

military installation after being ordered not to, in violation of 18 U.S.C. § 1382.   Both

offenses allegedly occurred on September 9, 2007.

On March 12, 2008, the government and defendant entered into a six-month diversion

agreement (the "Agreement"), which by its terms expired on September 12, 2008 (doc. 6).

The Agreement allowed the government to reinstate the charges against defendant "prior to

the end of the diversion period upon termination of this Agreement by any party."[1]  As part of the Agreement, defendant, her counsel, and the prosecutor stipulated that defendant attempted to gain access to Fort Leavenworth in a vehicle on September 9, 2007.  They also stipulated that it was discovered defendant had been barred from the installation on December 20, 1999, and that her blood alcohol content on September 9, 2007 was .133%, exceeding the legal limit in Kansas.

On or about September 10, 2008, two days before the Agreement expired, the prosecutor handed defense counsel a document titled "Notice of Intent to Revoke Diversion."  But this document contained no information as to the specific conditions of the Agreement that were alleged to have been violated.  Nor was this document ever filed with the court.

On October 24, 2008, the government filed a formal motion to revoke diversion and to reinstate the charges (doc. 7).  An initial revocation hearing was held on January 14, 2009.  Defendant stipulated to the allegation in the motion that she had not paid the $500 fine called for by the Agreement.  The court granted the government's motion to revoke diversion and scheduled the case for trial.

This case was tried to the court, sitting without a jury at Fort Leavenworth, on February 11, 2009.  The stipulation of fact defendant signed as part of the Agreement was accepted into evidence without objection.  The only other evidence presented was the

---

[1]Doc. 6, at 2.

government's proffer of an officer's testimony.

Before the bench trial, defendant raised the issue of the six-month diversionary period expiring before the government filed its motion to revoke, i.e., as earlier indicated, the Agreement was entered into on March 12, 2008, and by its terms expired on September 12, 2008, yet the government did not file its motion to revoke the deferred prosecution until October 24, 2008.  At the conclusion of the government's case, defendant orally moved for dismissal based on the government failing to file a formal motion to revoke before the diversion expired, and further on the basis that the government did not sustain its burden in proving defendant knew she was barred from the military installation, which defendant argued was required for her to be in violation of 18 U.S.C. § 1382.  Because of these issues, the court took the case under advisement and set a briefing schedule for defendant's motion to dismiss.  To more precisely frame the issues presented, defendant filed a formal motion to dismiss on February 27, 2008.

## II.   Discussion and Analysis

### A.   Expiration of Diversionary Period

Initially, the court addresses whether defendant waived her right to challenge the revocation of the Agreement by not timely raising the issue concerning the expiration of the diversion period.  The government argues defendant did not claim the prosecution was barred because of an expired diversion agreement until the day of trial and therefore waived her right to do so.  As noted by the government, under Fed. R. Crim. P. 12(b)(3)(A), a

motion alleging a defect in instituting prosecution must be raised before trial.[2]  Fed. R. Crim.

P. 12(e) states that a party waives any Rule 12(b)(3) defense not raised by the deadline the

court sets to make pretrial motions.

Defendant's recitation of the procedural history states she raised the issue of the

expired diversion on February 11, 2009, right before the bench trial was held.  At the

conclusion of the government's case, defendant also orally moved for dismissal.  In its

response, the government accepts defendant's recitation of the procedural history and makes

clear defendant first raised the issue of the expired diversion and moved to dismiss on the

day of trial.  Defendant therefore seems to argue that defendant should not have waited until

the day of trial to raise the issue.

The court finds defendant has not waived her right to challenge the revocation of the

Agreement based on the diversion period expiring.  In a case cited by the government, the

Second Circuit Court of Appeals stated that a claim the prosecution was barred by an earlier

deferred prosecution agreement should have been raised prior to trial under Fed. R. Crim.

P. 12(b).[3]  The court then specifically noted the claim was not raised before or at trial.[4]  The

government also cites a Tenth Circuit Court of Appeals case for the proposition that a

---

[2]The government notes this case involves petty offenses and is governed by Fed. R. Crim. P. 58.  That rule provides that the rules of criminal procedure apply unless Rule 58 applies otherwise.  Fed. R. Crim. P. 58(a)(1).

[3]*United States v. Gogarty*, 533 F.2d 93, 95 (2d Cir. 1976).

[4]*Id.*

pretrial motion must plainly set forth the grounds upon which relief is sought.[5]  The issue in

that case was whether the defendant waived a particular argument by not including it in his

pretrial motion.[6]  The court finds both of these cases distinguishable.  Here, defendant raised

her claim before the trial began and did not fail to include her argument in a pretrial motion

filed with the court.

      The government correctly notes the court did not establish any deadline for pretrial

motions in this particular case.  The court rejects the government's argument that defendant's

motion was not made pretrial because she did not raise the issue until the day of trial.  The

government has provided no authority that a defendant must make a motion alleging a defect

in instituting a prosecution at some point earlier than the day of trial when the court has

declined to establish any deadline for pretrial motions.  The defendant raised the issue of the

expired diversion before the bench trial was held.  Although defendant did not formally

move to dismiss until after the bench trial, the court finds by raising the issue pretrial, she

did not waive her right to challenge the expiration of the diversion period.

      Given the court's findings that defendant did not waive her right to challenge the

expired diversion period, the court need not address defendant's arguments that she is

making a challenge to subject matter jurisdiction, which may be raised at any time, or

alternatively, that her counsel was clearly ineffective and therefore defendant's right to

---

[5]*See United States v. Barajas-Chavez*, 358 F.3d 1263, 1266 (10th Cir. 2004).

[6]*Id.*

counsel was violated.  The court will now address whether the information should be dismissed based on the diversion period expiring before the government filed its motion to revoke diversion and reinstate the charges.

The Agreement, in part, provides:

> [I.]    On the Authority of the Attorney General of the United States, United States Attorney for the District of Kansas, prosecution in this District for this offense shall be deferred for the period of 6 months from this date, provided you abide by the following conditions and requirements of this Agreement set out below.

> [II.]    Should you violate the conditions of the Agreement, the United States Attorney may revoke or modify any conditions of this pretrial diversion program or change the period of supervision, which shall in no case exceed six months.  In this case you will be notified of the specific conditions you have violated.

> [III.]   After successfully completing your diversion program and fulfilling all the terms and conditions of the Agreement, no prosecution for the offenses set out above will be instituted in this District, and the charges against you, if any, will be dismissed with prejudice.

> . . . .

> 3.    The Defendant understands that, during her period of diversion of prosecution, the charges pending against her are deferred for a period of six months.  The United States Attorney may reinstate the charges against the Defendant prior to the end of the diversion period upon termination of this Agreement by any party.

> 4.    Upon successful completion of this Diversion Agreement, the United States of America agrees not to reinstate the charges against the Defendant.

5.     Defendant agrees to a diversion period of 6 months, beginning March 12, 2008 and ending September 12, 2008, conditioned upon his [sic] successful completion of the diversionary program and upon the following conditions:

a.     The Defendant refrain from violating any of the laws of the United States of America or of any state.

b.     The Defendant will submit to the Government a $500 fine.

c.     The Defendant will sign the Stipulation of Fact at Appendix A.

d.     The Defendant shall not consume any alcohol or use any illegal drugs during her term of diversion.[7]

As mentioned earlier, defendant argues the express terms of the Agreement require dismissal of the case because the government failed to reinitiate prosecution prior to the conclusion of the diversionary period.  Defendant first relies on the explicit terms of the Agreement.  Specifically, she argues the terms of the Agreement stating the government may reinstate the charges "prior to the end of the diversion period" and the Agreement "shall in no case exceed six months" bar the prosecution.

The government notes that defendant only cites and relies upon two paragraphs of the Agreement.  The government argues the paragraphs cited by defendant, paragraphs II and 3, do not contain any promise not to prosecute defendant.  The government also states the government does not give up its right to or promise not to prosecute defendant in the two

---

[7]Doc. 6, at 1-2.  The court has labeled the first three paragraphs with Roman numerals to help clearly identify the Agreement's provisions.

paragraphs.

The government states its promise not to prosecute defendant is addressed in the paragraphs III and 4.  The government argues its promise not to prosecute defendant is contingent on defendant "successfully completing [the] diversion program and fulfilling all the terms and conditions of the Agreement."  The government argues that in order for defendant to benefit from the government's promise not to prosecute her, she must fulfill all the conditions of the Agreement, including that she pay the $500 fine.  It is undisputed defendant failed to pay the fine.

As noted by the parties, a diversion agreement is a contract between the prosecutor and the defendant.[8]  In interpreting a contract, the court should examine the contract as a whole taking into account all the language in the instrument and construing it in harmony with other portions on the agreement.[9]  "Clear and unambiguous language in a written contract is controlling."[10]  An ambiguity will be construed against the party who drafted the agreement.[11]

Defendant relies on U.S. Magistrate Judge John Thomas Reid's interpretation of a diversion agreement in *United States v. Foster*.  Judge Reid first summarized three federal

---

[8]*United States v. Foster*, 823 F. Supp. 884, 886 (D. Kan. 1993).

[9]*Id.* at 887.

[10]*Id.*

[11]*See id.*

cases analyzing whether the government may file a motion to revoke a diversion after the period of diversion has expired.[12]  The undersigned will look at the same three cases.

In *United States v. Garcia*, the defendant and the government entered into a deferred prosecution agreement.[13]  The defendant agreed that within 90 days he would provide the government a drug dealer.  The government agreed that if the defendant produced such a dealer, it would not renew charges against him.  The agreement also provided that if the defendant failed to produce an acceptable dealer, the government could seek an indictment against him within 150 days.[14]

The defendant in *Garcia* failed to produce a dealer, and the 150 days expired without the government seeking an indictment.  After the 150-day period expired, the government sought and obtained an indictment.[15]  The Ninth Circuit Court of Appeals held the agreement unambiguously provided the defendant had 90 days to produce a dealer and if he did not do so, the government had 60 remaining days to institute indictment proceedings.  Since the government did not act within the 60 days, the Ninth Circuit concluded the indictment was invalid because it was obtained in violation of the express terms of the agreement.[16]

In *United States v. Gogarty*, the defendant and the government entered into a deferred

---

[12]*See id.* at 886-87.

[13]519 F.2d 1343, 1344 (9th Cir. 1975).

[14]*Id.*

[15]*Id.*

[16]*Id.* at 1345.

prosecution agreement which provided that the government could at any time revoke or modify the conditions or change the period of supervision.[17]  The agreement provided that, if the defendant violated any of the conditions, the government could at any time, within the twelve-month period of supervision, initiate prosecution for the offenses.  The agreement, however, also stated that if, upon the completion of the period of supervision, "a written report from the clinic is received to the effect that [the defendant has] fully complied with all of the above conditions and [has] remained a satisfactory participant in the approved program, no prosecution will be instituted in this District for the above offense."[18]

Eighteen months after the *Gogarty* agreement was signed, the charges were dismissed without explanation.  Ten days later, the defendant was arrested for a similar offense.  He was then indicted and tried on the counts which were the subject of the agreement and the later offense.  The Second Circuit Court of Appeals rejected the defendant's argument that the charges that were the subject of the agreement were dismissed pursuant to the terms of the agreement such that prosecution on them was barred.[19]

The Second Circuit found the terms of the agreement permitted prosecution within and beyond the twelve-month period.  The government's promise not to prosecute after the period was expressly conditioned on the receipt of a favorable report, which was never written.  The court found that because the defendant failed to carry out his part of the

---

[17]533 F.2d 93, 94 (2d Cir. 1976).

[18]*Id.*

[19]*Id.*

-10-

bargain, he did not have a contractual right not to be prosecuted.  The court also noted that, unlike in *Garcia*, the agreement contained no time limit on the government's right to re-prosecute the defendant in the event of noncompliance.[20]

In *United States v. Allen*, which was decided by a judge in the Eastern District of Michigan, the defendant and the government entered into an agreement for pretrial diversion for a twelve-month period.[21]  The agreement provided:

> Should you violate the conditions of this Agreement, the United States Attorney may revoke or modify any conditions of this pre-trial diversion program or change the period of supervision, which shall in no case exceed 18 months.  The United States Attorney may release you from supervision at any time.  The United States Attorney may at any time within the period of your supervision initiate prosecution for this offense should you violate the conditions of this Agreement.  In this case he will furnish you notice specifying the conditions of the Agreement which you have violated.
> After successfully completing your diversion program and fulfilling all the terms and conditions of the Agreement, no prosecution for the offense . . . will be instituted in this District, and the charges against you, if any, will be dismissed.[22]

After the twelve-month period expired, the government wrote to defendant notifying him that he had breached the agreement and that the diversion term was being extended six months.[23]  An indictment was later returned.  The defendant then filed a motion to dismiss

---

[20]*Id.* at 95.

[21]683 F. Supp. 1136, 1137 (E.D. Mich. 1988).

[22]*Id.*

[23]*Id.* at 1137-38.

the indictment claiming the prosecution was barred because the twelve-month period expired without the defendant being notified by the government of any violation of the agreement, without being charged with any offense, and without having the diversion period extended.[24]

The *Allen* court found there was no language in the agreement from which it could infer a right to initiate prosecution after the one-year period had expired in the absence of a timely extension.[25]  The court held the prosecution was inconsistent with the terms of the agreement because it was not initiated within the time period specified in the agreement and no timely extension was effectuated.  The court therefore granted defendant's motion to dismiss.[26]

The agreement that was before Judge Reid in *Foster* provided that, if the defendant violated the conditions of the diversion, the government "may during the period of pretrial diversion" revoke or modify any condition, change the period of supervision, discharge the defendant from supervision, and prosecute defendant for the offenses.[27]  The agreement then stated that if the defendant complies with the conditions during the period of supervision, no criminal prosecution against the defendant concerning the crimes will be instituted in the district, and any proceedings already instituted would be deferred and the charges then

---

[24]*Id.* at 1138.

[25]*Id.* at 1139.

[26]*Id.*

[27]*Foster*, 823 F. Supp. at 885.

pending would be dismissed upon completion of the diversion period.[28]  In that case, a probation officer discovered *after* the diversion period expired that the defendant had been arrested and charged with driving under the influence shortly *before* the diversion period expired.[29]

Judge Reid found the language of the agreement in *Foster* was nearly identical to the language of the agreement in *Allen*.  Judge Reid relied on the language in the agreement stating that should the defendant violate the conditions of the diversion, the government may, during the period of pretrial diversion, revoke the diversion or prosecute the defendant. Judge Reid distinguished *Gogarty* because, although containing similar language, it contained a further provision that the government's promise not to prosecute was explicitly conditioned on receipt of a favorable report upon the completion of the period.  Judge Reid stated that the agreement in *Foster* contained no provision permitting the revocation of diversion or prosecution for the underlying offense after the diversionary period expired.[30]

Judge Reid acknowledged the agreement provided that if the defendant complied with the conditions during the period of supervision, no criminal prosecution would be instituted against the defendant for the underlying charge.  The government argued that such language allowed for revocation or prosecution after the period of diversion.  Judge Reid rejected the government's argument, finding such an interpretation was not clear and was contrary to the

---

[28]*Id.*

[29]*Id.*

[30]*Id.* at 887.

earlier language that the government may revoke or prosecute during the period of diversion.[31] Judge Reid concluded the agreement unambiguously required the government to initiate revocation during the period and, even if the agreement were deemed ambiguous on the point, the court would construe the ambiguity against the government, which drafted the agreement.  Judge Reid therefore granted the defendant's motion to dismiss the government's motion to revoke the diversion agreement.[32]

In *United States v. Harris*, a case decided after *Foster*, the defendant and government entered into a diversion agreement similar to the one in *Gogarty*.[33]  The government moved to proceed to trial approximately twenty-three days after the twelve-month diversion period ended.[34]  The Eleventh Circuit Court of Appeals held that the government did not breach the agreement because it could have properly prosecuted the defendant within or after the twelve-month period.[35]  The Eleventh Circuit agreed with the district court that the agreement contained two separate provisions: one which authorized the government to prosecute the defendant during the diversion period if he violated the conditions and the other, which did not contain a time limit, that envisioned the government retained its right to prosecute the defendant if it did not receive the required favorable report.  The court noted

---

[31]*Id.*

[32]*Id.*

[33]376 F.3d 1282, 1285, 1287 (11th Cir. 2004).

[34]*Id.* at 1285.

[35]*Id.* at 1288.

that if it accepted the defendant's argument that the prosecution was barred, the second provision would be rendered meaningless because the government could not possibly receive a favorable report of compliance until after the twelve-month period had concluded.[36]

The court now looks to the text of the Agreement and compares it to the text of the diversion agreements in the cases discussed above. As explained above, the court examines the Agreement as a whole and takes into account all the language in the instrument. The court construes the language in harmony with the other provisions of the Agreement. The court will therefore not solely rely on paragraphs II and 3, as suggested by defendant.

The court finds paragraph I consists of the government's promise to defer the prosecution for six months, provided defendant abides by the Agreement's conditions and requirements. Paragraph II provides that the government may revoke or modify the conditions or change the period of supervision if defendant violates the conditions. Paragraph III consists of the government's promise that, if defendant successfully completes the diversion program and fulfills all conditions, no prosecution will be instituted and any charges will be dismissed with prejudice.

Paragraph 3 states that during the diversion period the charges pending against defendant are deferred for six months but the government may reinstate the charges prior to the end of the period upon termination of the Agreement by either party. Paragraph 4 consists of the government's promise not to reinstate the charges against the defendant

---

[36]*Id.* at 1287.

"[u]pon successful completion" of the Agreement.  Paragraph 5 defines the six-month diversion period and specifies the diversion conditions.

The court focuses on paragraphs III, 3, and 4, which must be construed in harmony with one another.  Although the Agreement does not contain a condition of the receipt of a report at the end of the diversion period, the court finds the holdings in *Gogarty* and *Harris* persuasive.  The government's promises not to prosecute or reinstate charges in paragraphs III and 4 are *specifically* conditioned on defendant's successful completion of the diversion program.  Similar to a report at the end of a diversion period, defendant could not have successfully *completed* the program until after the six-month diversion period ended.  Unlike in *Garcia*, the government's right to reinstate charges was not limited to a certain time period.  The court therefore finds the Agreement does anticipate the government reinitiating the prosecution after the six-month period.

The undersigned respectfully disagrees with the holding in *Allen* and Judge Reid's holding in *Foster* that, to allow reinstatement of the charges after the period, a diversion agreement must contain a provision that permits the revocation of diversion of prosecution of the underlying offense after the period of diversion has expired.  Rather, as the government argues, it has the right to prosecute absent an agreement to the contrary.  Such a right need not be explicitly reserved or implied from the language in a diversion agreement.  Further, the court does not find, as Judge Reid did, that the government's conditional promises not to prosecute in paragraphs III and 4 are contrary to the language in paragraph 3.

The court acknowledges that paragraph 3 states the government may reinstate the charges prior to the end of the diversion period upon termination of the Agreement. The language does not state, however, that this is the only way the government may reinstate charges. Paragraph 3 merely gives the government the opportunity to reinstate charges, which are otherwise deferred, if defendant terminates the Agreement during the six-month period. Paragraphs III and 4 allow the government to reinstate charges if the defendant does not successfully complete the Agreement's conditions. Interpreting the Agreement to prohibit the government from reinstating the charges after the six-month period would render paragraphs III and 4 meaningless, which the court naturally declines to do.

As stated above, the government's promises not to prosecute in paragraphs III and 4 are conditioned on defendant's successful completion of the Agreement. It is undisputed defendant failed to pay the fine and therefore did not successfully complete her diversion. Defendant cannot invoke her contractual right not to be prosecuted where she failed to live up to her part of the bargain.[37] The court finds the Agreement unambiguously allows the government to reinstate charges after the six-month diversion period.

Defendant also argues the government's failure to seek revocation or prosecution within the diversionary period is not saved by its document titled "Notice of Intent to Revoke Diversion." The government does not seem to argue that giving this notice to defense counsel two days prior to the end of the diversionary period constitutes an attempt at

---

[37]*Gogarty*, 533 F.2d at 95.

revocation or reinstatement of the charges within the period.  The court will therefore not address the issue.

Defendant argues that in order for the court to have jurisdiction to hear this matter after the Agreement's expiration, the government must have formally initiated the proceeding prior to the end of the diversion period.  Defendant argues the situation is analogous to the court's ability to retain jurisdiction over revocation of probation or supervised release after expiration of the term of release only where a warrant or summons is filed prior to the expiration of the time period.  The court rejects defendant's argument that the court lost jurisdiction over this case when the diversion period expired.  Further, the court is not convinced the present situation is similar to the court's ability to retain jurisdiction over revocation of probation or supervised release.[38]

The government notes there are practical difficulties with defendant's position that the government had to revoke the Agreement before the six-month period expired and therefore such a position was not the intention of the parties.  The Agreement, like most other diversion agreements, contains a condition that defendant refrain from violating any law of the United States or of any state.  The government states it takes time to update criminal databases and to investigate a criminal allegation.[39]  The government therefore

---

[38]*See United States v. Hicks*, 693 F.2d 32, 34-35 (5th Cir. 1982) (contrasting probation and diversion).

[39]This very situation occurred in *Foster*.  The defendant was arrested during his diversionary period but was not found guilty of the offense until after the period expired. 823 F. Supp. at 885.

argues that on the day a diversion agreement is set to expire, the government would not know and usually could not know whether the defendant violated a law. The government concludes that under defendant's interpretation of the Agreement, the government would have to file a motion to revoke diversion for each diversion agreement to preserve its right to prosecute a defendant who commits a crime toward the end of the diversionary period.

Similarly, the Agreement does not contain a specific date by which defendant was to remit the $500 fine. Defendant therefore had until the end of the period to pay the fine. The government could not have known until the period expired that defendant failed to remit the fine. Indeed, under defendant's interpretation of the agreement, the government would have had to file a motion to revoke the Agreement on or prior to September 12, 2008, even though defendant's time to pay the fine would not yet have expired and she would not yet have been in violation of the Agreement.

The court agrees with the government that it was likely not the parties' intent for the government to have to file a motion to revoke or to reinstate charges before violations of the Agreement occurred or were discovered. Regardless, as explained above, the court finds the text of the Agreement unambiguously does not require the government to file motions to revoke before the expiration of the period.[40] The court therefore need not look elsewhere to determine the parties' intent.

The court finds the government could prosecute defendant after the six-month

---

[40] Nobody should infer from this ruling, however, that the court believes the Agreement represents a well-drafted legal document.

diversion period.  The government's promises not to reinstate the charges against defendant were conditioned on defendant's successful completion of the terms of the Agreement, which she failed to do.

B.     Notice Required for Violation of 18 U.S.C. § 1382

As stated above, defendant was charged with driving while intoxicated.  She also was charged with re-entering the Fort Leavenworth military installation after being ordered not to, in violation of § 1382.  This section, at least in relevant part, states:

> Whoever reenters or is found within any such reservation, post, fort, arsenal, yard, station, or installation, after having been removed therefrom or ordered not to reenter by any officer or person in command or charge thereof . . . [s]hall be fined under this title or imprisoned not more than six months, or both.[41]

Defendant argues the government failed to present sufficient evidence to convict her of violating § 1382.  Defendant states the stipulated facts do not reflect she ever had actual or constructive notice that she was barred from Fort Leavenworth.  Defendant argues that without proof of such knowledge, she cannot be convicted of trespass.

The government notes the stipulation of fact states that when defendant attempted to gain access to Fort Leavenworth on September 9, 2007, it was discovered she had been barred from the installation on December 20, 1999.  The government concedes it introduced no other evidence on this point and it did not offer any evidence that at the time she entered the installation, defendant was aware of the prohibition.  In its response, the government

---

[41]18 U.S.C. § 1382.

does not take a position on the level of knowledge it must prove to show a violation of §
1382, but it does concede that, whatever the required level of knowledge is, it was not shown
here.

The undersigned previously held in another case that because the government did not
prove a defendant had ever received the letter barring him from Fort Leavenworth, the
defendant could not be convicted of violating § 1382.[42] Given the government's concessions
in this case, the court need not decide what level of knowledge defendant was required to
have in order to violate § 1382 and whether the government met its burden in proving the
required knowledge.  That is, the court finds defendant cannot be convicted of violating §
1382.

C.    <u>Violation of 13 U.S.C. § 13</u>

Based on the stipulation of fact signed by defendant and presented during the trial,
the court finds defendant drove a vehicle under the influence of alcohol.  Defendant failed
a field sobriety test and was later administered a Breathalyzer test which showed her blood
alcohol content was .133%.  The legal blood alcohol content limit in the state of Kansas is
.08%.  The court therefore finds defendant is guilty of driving under the influence in
violation of § 13, which incorporates Kan. Stat. Ann. § 8-1567.

III.   Conclusion and Order

In consideration of the foregoing,

---

[42]*See United States v. Burris*, No. 07-7123, 2007 WL 4322230, at *2 (D. Kan. Nov.
7, 2007).

IT IS HEREBY ORDERED:

1.      Defendant's motion **(doc. 13)** to dismiss this prosecution is granted in part and

denied in part.

2.      Defendant is found guilty of violating 18 U.S.C. § 13.

3.      Defendant is found not guilty of violating 18 U.S.C. § 1382.

4.      Defendant shall appear before the court for sentencing in the U.S. Courthouse

in Kansas City, Kansas, on **September 9, 2009, at 1:00 p.m.**

Dated this 27th day of July, 2009, at Kansas City, Kansas.


 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge